UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
RICHARD MALINE,

                                    Plaintiff,

-against-

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                                    Defendant.
----------------------------------------------------------------X

**MEMORANDUM & ORDER**

**08-CV-1712 (NGG)(CP)**

NICHOLAS G. GARAUFIS, United States District Judge.

      Plaintiff Richard Maline ("Maline") brings this action against Defendant Michael Astrue, Commissioner of the Social Security Administration (the "Commissioner") under 42 U.S.C. § 405(g) seeking judicial review of the Commissioner's order denying his March 13, 2002 application for Disability Insurance Benefits ("DIB"). (Compl. (Docket Entry #1) ¶ 6.) The Commissioner concedes that the Administrative Law Judge ("ALJ") made certain legal errors and moves for an order remanding the case for rehearing. (Def. Mem. (Docket Entry #14) 2.) Maline cross-moves for judgment on the pleadings, seeking to remand the case solely for the calculation of benefits. (Pl. Mem. (Docket Entry #16) 1.) For the following reasons, the Commissioner's motion is granted, and Maline's motion is denied.

**I. BACKGROUND**

      Maline was born on August 7, 1965. (Admin. R. (Docket Entry # 18) 787.) He attended three years of college and worked as an electrician for nearly twenty years. (Id. at 788-790.) On February 6, 2001, Maline slipped and fell from a ladder at work, injuring his left hip and lower back. (Id. at 722.) On March 11, 2002 Maline first applied for DIB alleging disability beginning February 10, 2001. (Id. at 19.) The ALJ denied his application, and Maline brought his case

before the Appeals Council. (Id. 55-65.) The Appeals Council remanded the case to another ALJ, Marilyn Hoppenfeld ("ALJ Hoppenfeld"), who denied Maline's claim on April 27, 2007. (Id. at 31.)

At the hearing before ALJ Hoppenfeld, Maline testified that he was unable to walk for more than three blocks, bend or kneel without pain, stand for more than thirty minutes, or sit for more than ten minutes. (Id. at 22.) He also testified that he suffered from depression resulting from his constant pain and inability to work. (Id. at 22) As evidence of his disability, Maline provided notes from his orthopedic surgeon, Dr. Benatar, diagnosing him with lumbar disc herniation and lumbosacral radiculitis. (Id. at 26.) He further provided notes from his pain specialist, Dr. Thomas, stating that Maline was completely disabled and that he could "only sit 2 hours or stand/walk 4 hours in an ordinary 8-hour workday." (Id. at 9,27.)

The Social Security Administration's ["SSA"] medical expert, Dr. Ernest Abeles, testified that that Maline's physician's opinions were "not supported by adequate clinical/laboratory evidence." (Id. at 27.)[1] ALJ Hoppenfeld found that Maline's "medically determinable impairments could have been reasonably expected to produce some of the alleged symptoms, but [] his testimony concerning the intensity, persistence and limiting effects of these symptoms [was] not supported by [] substantial acceptable medical documentation." (Id. at 29.) She further found that Maline could perform unskilled sedentary work. (Id. at 31.) ALJ Hoppenfeld concluded that Maline "was not disabled under Sections 216(i) and 223(d) of the Social Security Act." (Id. at 31.)

---

[1] After Maline's hearing, Dr. Abeles entered into a consent agreement with the New York State Department of Health in which he agreed not to contest charges of professional misconduct and to limit his practice of medicine to conducting independent medical examinations. (Def. Mem. at 9.) In his brief, the Commissioner stated that he "recognizes that the imposition of restrictions on Dr. Abeles may cast doubt on the reliability of his testimony," and further explained that, upon remand, "the ALJ will obtain new testimony from a medical expert." (Id. at 8-9.)

2

## II. STANDARD OF REVIEW

### A. Rule 12(c)

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." The standard of review under Rule 12(c) is identical to the standard applied under Rule 12(b)(6). Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). To survive a Rule 12(b)(6) motion, the complaint must contain "sufficient factual matter . . . to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009). A court is required "to accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008). In addition to the pleadings, the court may consider "statements or documents incorporated by reference in the pleadings . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns, Inc. v. Schaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

### B. Administrative Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). Upon setting aside the Commissioner's decision, the court may either remand for a new hearing or remand for the limited purpose of calculating benefits. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987). Remand for the calculation of benefits is appropriate when the record provides persuasive proof of disability and the application of the correct legal standards "could lead to only one conclusion." Id. But, "[w]here there are gaps in the administrative

record or the ALJ has applied an improper legal standard," the court must remand "for further development of the evidence." Rosa v. Callahan, 168 F.3d 72, 82 (2d Cir. 1999).

## III. DISCUSSION

### A. Standard for Determining Disability

To determine whether a claimant is entitled to DIB, an ALJ utilizes a five-step analysis, as set forth in 20 C.F.R. § 404.1520(a)(4). The Second Circuit, in Dixon v. Shalala, described this five-step analysis:

> The first step in the sequential process is a decision whether the claimant is engaged in "substantial gainful activity." If so, benefits are denied.
>
> If not, the second step is a decision whether the claimant's medical condition or impairment is "severe." If not, benefits are denied.
>
> If the impairment is "severe," the third step is a decision whether the claimant's impairments meet or equal the "Listing of Impairments" . . . of the social security regulations. These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled and entitled to benefits.
>
> If the claimant's impairments do not satisfy the "Listing of Impairments," the fourth step is assessment of the individual's "residual functional capacity," i.e., his capacity to engage in basic work activities, and a decision whether the claimant's residual functional capacity permits him to engage in his prior work. If the residual functional capacity is consistent with prior employment, benefits are denied.
>
> If not, the fifth and final step is a decision whether a claimant, in light of his residual functional capacity, age, education, and work experience, has the capacity to perform "alternative occupations available in the national economy." If not, benefits are awarded.

54 F.3d 1019, 1022 (2d Cir. 1995).

### B. The ALJ's Findings: Steps One to Three

Under the first step of the analysis, the ALJ found that Maline was not engaged in "substantial gainful activity." (Admin. R. 25.) The parties do not dispute this finding. Under

4

the second step of the analysis, the ALJ found that Maline suffered from "the following severe impairment: lumbar disc pathology, with an MRI impression of herniation at L4-5 and L5-S1 . . . [and] back pain and anxiety." (Id.) The parties do not dispute this finding. Under the third step of the analysis, ALJ Hoppenfeld found that Maline "did not have an impairment or combination of impairments that met or medically equaled one of the [SSA's] listed impairments." (Id.) The parties do not dispute this finding.

### C. The ALJ's Findings: Step Four

#### 1. The Treating Physician Rule

Under the treating physician rule, ALJ must afford a claimant's treating physician's opinion "controlling weight" if the treating physician's "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). An ALJ may not ignore a claimant's physician's opinion or substitute her own view of the medical evidence for that of a treating physician. Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998). However, if other medical evidence in the record contradicts the treating physician's opinion, the ALJ is not required to give that opinion controlling weight. Id. at 80. If the ALJ does not give the opinion "controlling weicht," the ALJ must determine the amount of weight to give the opinion using the following factors: (1) the length, nature and extent of the treatment relationship; (2) the evidence in support of the treating physician's opinion; (3) the consistency of the opinion with the entirety of the record; (4) whether the treating physician is a specialist; and (5) other factors that are brought to the attention of the Commissioner that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(d)(6). While the ALJ need not explicitly discuss each of these factors, she must

apply "the substance of the treating physician rule." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). "A reasonable basis for doubt that the ALJ applied the correct legal standard in determining the weight to afford the treating physician can be grounds for remand." Sutherland v. Barnhart, 322 F. Supp. 2d 282, 291 (E.D.N.Y. 2004).

If evidence from a treating physician is inadequate to determine RFC, the ALJ must "affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (internal quotations omitted). If "the adjudicator cannot ascertain the basis of the [treating physician's] opinion from the case record, the adjudicator must make every reasonable effort to recontact the source for clarification of the reasons for the opinion." SSR 96-5p, 1996 SSR LEXIS 2; see also 20 C.F.R. § 404.1513(e)(3) (specifying the need for a complete record in RFC determinations). The ALJ's duty to seek additional information applies whenever the opinion of a "treating physician or . . . other medical source is inadequate" to determine a claimant's RFC. 20 C.F.R. § 404.1512(e)(1).

2.  Medical Evidence

Under the fourth step of the analysis, the ALJ found that Maline could no longer perform his prior work as an electrician, but that he had "the residual functional capacity ["RFC"] to perform a wide range of light work. He is able to sit, stand and walk, for six hours in an eight hour day and lift twenty pounds occasionally and ten pounds frequently." (Admin. R. at 25.) Before reaching this conclusion, the ALJ discussed Dr. Thomas's opinion that Maline could "sit only 2 hours and stand/walk 4 hours" and "occasionally lift up to ten pounds [] and [carry] up to 5 pounds frequently" in an eight-hour workday. (Id. at 26.) The ALJ did not give Dr. Thomas's opinion controlling weight because she found that it was "not supported by adequate clinical/laboratory evidence." (Id. at 27.) She also declined to give Dr. Thomas's opinion

controlling weight because it appeared on a "check-off-the-box 'form' assessment." (Id.) The ALJ did not discuss Dr. Thomas's diagnosis that Maline suffered from lumbar spine degeneration, lumbar radiculopathy, and myofascial pain. (Id. at 464-71.) She also did not discuss the opinion of Maline's orthopedic surgeon, Dr. Benatar, diagnosing Maline with multi-level lumbar disc herniation with radiculitis. (Id. at 324.) The ALJ instead based her finding concerning Maline's RFC on Dr. Abeles' opinion that "there was no electrodiagnostic evidence for lumbosacral radiculopathy," and therefore "there is no objective medical reason why the claimant could not stand/walk 6 hours out of an 8-hour-workday, and he could possibly lift 20 pounds, and he could lift 10 pounds." (Id. at 26.)

ALJ Hoppenfeld did not sufficiently explain why she gave little or no weight to the medical source statements pertaining to Maline's RFC. She said only that Maline's physicians's opinions were "not supported by adequate clinical/laboratory evidence." (Id. at 27.) The ALJ did not address whether the physicians's opinions were inconsistent with other substantial evidence in the record, nor did she assess any other factors in determining what weight to give the opinions. (See Id.) Although she was not bound to adopt the conclusions of Maline's physicians, ALJ Hoppenfeld should have substantively applied the treating physician rule by providing "good reasons" for her decision not to do so. Kennedy v. Astrue, 343 F. App'x 719, 722 (2d Cir. 2009). Furthermore, because the ALJ found that the treating physicians's statements were not supported by adequate evidence in the record, she should have attempted to contact Dr. Thomas and Dr. Benatar for clarification. This was legal error.

D.  **Determination of Claimant's Credibility**

The ALJ must consider a claimant's subjective testimony regarding his or her alleged disability, but the ALJ "is not required to accept the claimant's subjective complaints without

7

question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010). If a claimant's symptoms suggest a greater severity of impairment than can be demonstrated by objective medical evidence, the ALJ must consider additional factors including the claimant's daily activities, the location, duration, frequency and intensity of symptoms, the type, effectiveness and side effects of medication, and other treatment or measures to relieve those symptoms. See 20 C.F.R. § 404.1529(c)(3). The ALJ may not simply state that a claimant's allegations are not credible without discussing these factors. See Williams o/b/o Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988). The ALJ's decision must contain reasons for its credibility findings "set forth with sufficient specificity to permit intelligible plenary review of the record." Id.

ALJ Hoppenfeld erred in concluding that Maline was not credible without discussing in form or in substance the factors governing credibility determinations. Without providing any additional reasons for her finding, the ALJ stated that Maline's "testimony concerning the intensity, persistence and limiting effects of these symptoms [was] not supported by [] substantial acceptable medical documentation." (Admin. R. at 29.) Therefore, the case must be remanded to permit the ALJ to determine Maline's credibility following the factors enumerated in 20 C.F.R. §404.1529(c)(3), to properly apply of the treating physician rule, and to further develop the evidence.

IV. CONCLUSION

For the reasons stated above, the Commissioner's motion is GRANTED and Maline's motion is DENIED. Pursuant to 42 U.S.C. § 405(g), the Commissioner's denial of benefits is vacated and remanded for further proceedings. The ALJ shall set forth her findings with

particularity and apply the legal standards set forth in this order. The court directs the ALJ to obtain testimony from a new independent medical expert.

SO ORDERED.

                                                                       s/Nicholas G. Garaufis

Dated: Brooklyn, New York                       NICHOLAS G. GARAUFIS
       October 20, 2010                           United States District Judge